BERGER, Judge, concurring.
*455 I fully concur in the majority opinion, but write separately to address a trend in this Court's jurisprudence that has troubling implications.
In the last few years, this Court increasingly has overruled precedent on the ground that a case, although published and otherwise controlling, itself failed to follow an even earlier Court of Appeals or Supreme Court case.[1]
At first glance, this approach might seem appropriate. After all, In re Civil Penalty tells us that one panel cannot overrule another on the same issue. 324 N.C. 373, 384, 379 S.E.2d 30, 36-37 (1989). If it appears a second panel did precisely that by refusing to follow the precedent set by the first panel, should the third panel faced with the issue not ignore the second and follow the first? But, what if a fourth panel comes along and concludes that the second panel properly distinguished or limited the first panel? That fourth panel could refuse to follow the third panel on the ground that it improperly overruled the second.
This may sound more like a law school hypothetical than a real-world problem, but it is very real. As the case before us here demonstrates, this Court can be trapped in a chaotic loop as different panels disagree, not only on the interpretation of the law, but also on what law appropriately controls the issue.
This problem is compounded by the reality that we are an intermediate appellate court that sits in panels. Ordinarily, the doctrine of stare decisis will prevent appellate courts from casually tossing away precedent decided just a few years (or even months) earlier.[2] But that *456 precedential effect is much weaker when a court sits in panels where the judges considering the issue were not necessarily involved in the earlier decision. As the dissent notes in footnote 4, we make mistakes.
One solution to this problem is for this Court to write opinions following our precedent, notwithstanding that panel's view of the weaknesses and errors within the current state of the law. In such an opinion, that panel could explain why the precedent is incorrect and make a direct request for the *450 Supreme Court to use their power of discretionary review to announce the correct rule.
But many judges on this Court view this approach as unrealistic.[3] The Supreme Court hears cases on discretionary review primarily because they involve matters of "significant public interest" or "major significance to the jurisprudence of the State." N.C. Gen. Stat. § 7A-31. Though our frequent intramural disputes over In re Civil Penalty seem significant to us, the underlying legal issues often are narrow, are of no public interest, and affect only minor or isolated issues within our jurisprudence. At a high court that hears only seventy or eighty cases on discretionary review each year, these simply won't make the cut.
There is another option. This Court now has the power to sit en banc . See N.C. Gen. Stat. § 7A-16. When the Supreme Court issued procedural rules for our en banc review, it instructed that we may sit en banc "to secure or maintain uniformity of the court's decisions." N.C.
*457 R. App. P. 31.1(a)(1). This suggests that our Supreme Court anticipated we would use our authority to sit en banc to address these minor conflicts in our case law and resolve them ourselves. And, of course, if this Court sitting en banc gets it wrong, an opinion explaining the conflicting cases and the detailed reasons underlying our interpretation of them would issue from this Court, producing an excellent vehicle by which the Supreme Court can grant review and announce the correct rule.
Unfortunately, we have yet to sit en banc . To date, there have been 61 petitions filed requesting this Court to hear cases en banc , and we have declined to hear every single one. Perhaps some of my fellow judges on this Court are skeptical of whether the Supreme Court wants us to resolve our own conflicts. Some may be convinced that this resolution is not ours, but the business of our higher court. Others may have different motives. Whatever the reasons we have declined to sit en banc may be, legitimate or otherwise, encouragement and accountability from the appellate bar would be beneficial. Of course, if the Supreme Court believes this Court should resolve our conflicts en banc , it would be helpful for that Court to say so.

Here are a few examples: State v. Alonzo , --- N.C. App. ----, ----, 819 S.E.2d 584, 586-87 (2018), temporary stay allowed , --- N.C. ----, 817 S.E.2d 733 (2018) ; State v. Jones , --- N.C. App. ----, ----, 802 S.E.2d 518, 523 (2017) ; State v. Mostafavi , --- N.C. App. ----, ----, 802 S.E.2d 508, 513 (2017), rev'd , 370 N.C. 681, 811 S.E.2d 138 (2018) ; State v. Meadows , --- N.C. App. ----, ----, 806 S.E.2d 682, 693-94 (2017), disc. review allowed , --- N.C. ----, 812 S.E.2d 847 (2018) ; In re D.E.P. , --- N.C. App. ----, ----, 796 S.E.2d 509, 514 (2017).

"The judicial policy of stare decisis is followed by the courts of this state." Musi v. Town of Shallotte , 200 N.C. App. 379, 383, 684 S.E.2d 892, 896 (2009) (citation omitted). "Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." Janus v. Am. Fed'n of State, Cnty., & Mun. Employees, Council 31 , --- U.S. ----, 138 S.Ct. 2448, 2478, 201 L.Ed.2d 924, 954-55 (2018) (citing Payne v. Tennessee , 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) ).
"[A]ntiquity has never been a reason for this Court to overrule its own prior case law or that of the North Carolina Supreme Court; indeed, this Court does not have authority to do so." Strickland v. City of Raleigh , 204 N.C. App. 176, 181, 693 S.E.2d 214, 217 (2010) (citation omitted). "When this Court is presented with identical facts and issues, we are bound to reach the same conclusions as prior panels of this court." Smith v. City of Fayetteville , 220 N.C. App. 249, 253, 725 S.E.2d 405, 409 (2012) (citation omitted).

Nevertheless, it is "an established rule to abide by former precedents, stare decisis , where the same points come up again in litigation, as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion, as also because, the law in that case being solemnly declared and determined what before was uncertain, and perhaps indifferent, is now become a permanent rule, which it is not in the breast of any subsequent judge to alter or swerve from according to his private sentiments; he being sworn to determine, not according to his private judgment, but according to the known laws and customs of the land, - not delegated to pronounce a new law, but to maintain and expound the old one - jus dicere et non jus dare [to declare the law, not to make the law]." McGill v. Town of Lumberton , 218 N.C. 586, 591, 11 S.E.2d 873, 876 (1940) (citation omitted).